# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WAVERY TOMPKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05 C 1691 |
| ) | |
| OFFICER DOMINICK PRANGE; BRAD ) | |
| KRAUSE; and BENJAMIN BARR, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Wavery Tompkins has sued Round Lake Beach police officer Dominick Prange, Lake County assistant state's attorney Brad Krause, and Benjamin Barr, a staff attorney for the Circuit Court in Lake County, alleging that they violated his federal constitutional rights and committed various torts under Illinois law. Mr. Krause has moved to dismiss Mr. Tompkins' claims against him, and Mr. Barr has moved for summary judgment on Mr. Tompkins' claims against him. For the reasons stated below, the Court grants both of those motions. The Court also considers in this ruling Mr. Tompkins' motion to appoint a new attorney to replace his former appointed attorney who withdrew with Mr. Tompkins' consent.

## Facts

In his amended complaint in this case, Mr. Tompkins alleges that on January 29, 2003, while working as a merchandise auditor for Retail Grocery Inventory Service, he was conducting at audit at a Kohl's department store in Gurnee, Illinois. Am. Compl. ¶¶ 16, 18. Mr. Tompkins alleges that he had a conversation with a woman employed by Kohl's and gave her his telephone

number. *Id.* ¶ 19. On January 31, Mr. Tompkins' supervisor called him, asked why he had given the employee his telephone number, and said that the employee was accusing him of sexual harassment. *Id.* ¶ 20. Mr. Tompkins told his supervisor that the conversation had been entirely innocuous and described the circumstances, but the supervisor did not accept Mr. Tompkins' explanation and fired him. *Id.*

That same day, Mr. Tompkins telephoned the Kohl's store to try to find out what had occurred. He spoke with the store's manager and asked if it was true that a store employee had accused him of sexual harassment. The manager denied any knowledge of the accusation. Mr. Tompkins replied that he found it difficult to believe that the manager would have no knowledge of the situation, and he ended the conversation. *Id.* ¶ 21.

On February 3, the Kohl's store manager evidently called the Round Lake Beach police department to make a report about Mr. Tompkins' telephone call. *Id.* ¶ 22. Round Lake Beach police officer Prange visited the manager at a Kohl's store in Round Lake Beach and took a statement from her. Mr. Tompkins alleges that the manager told officer Prange that she was involved an internal investigation regarding a sexual harassment claim made against Mr. Tompkins and that Mr. Tompkins had telephoned her on January 31 to inquire about the claim. *Id.* ¶ 23.

Later on February 3, Mr. Tompkins received a telephone call from a Waukegan police officer who did not identify himself; he asked Mr. Tompkins to call the Round Lake Beach police department and ask for officer Prange. *Id.* ¶ 24. Mr. Tompkins did so. Officer Prange asked whether Mr. Tompkins had made a threat over the telephone to the Kohl's store manager and the employee. Mr. Tompkins replied that he had been fired from his job as the result of an

alleged accusation of sexual harassment and had simply called the Kohl's store manager to find out if an accusation had in fact been made, and that the manager had denied any knowledge of the situation. *Id.* ¶ 25. Officer Prange advised Mr. Tompkins that the police were seeking a warrant for his arrest. *Id.* ¶ 26.

Several days passed without Mr. Tompkins being arrested. On February 8, he sent a letter to the chief of the Round Lake Beach police, asking for an explanation of officer Prange's threat of an arrest. He asked for a copy of the police report and advised that if necessary he would bring charges against the Round Lake Beach police department and/or officer Prange. *Id.* ¶ 27.

Mr. Tompkins alleges that after the Round Lake Beach police received his letter, they initiated proceedings to obtain an arrest warrant, in retaliation for his request for a copy of the police report, and to preempt any charges that he might file against the police. *Id.* ¶ 28. He alleges that officer Prange conferred with his superiors and then with Mr. Krause, an assistant state's attorney in Lake County, about obtaining a warrant. Mr. Tompkins alleges that assistant state's attorney Krause approved a charge of telephone harassment despite knowing that there was no legitimate basis for such a charge. *Id.* ¶ 29.

Mr. Tompkins alleges that on February 19, officer Prange sought an arrest warrant from a Lake County judge, maliciously and without probable cause. *Id.* ¶ 30. He contends, on information and belief, that neither officer Prange nor any other complaining witness signed an affidavit or any other sworn writing in support of obtaining a warrant and that no witnesses other than officer Prange appeared before the Lake County judge. *Id.* ¶¶ 31-32. Rather, Mr. Tompkins alleges, "[t]he only notarized or sworn documentary evidence that may have been

provided to this court was [an] Information signed by Defendant Krause, or Defendant [Benjamin] Barr [a staff attorney for the court] on behalf of Defendant Krause." *Id.* ¶ 32. Mr. Tompkins alleges that the information charging him with the crime included no details of his alleged conduct and contained allegations that the defendants knew or should have known were false. *Id.* The court appearance was not transcribed or recorded. *Id.* ¶ 33.

The judge issued an arrest warrant for Mr. Tompkins, and that same day, Waukegan police officers arrested him and took him to the Waukegan jail, where he was picked up by Round Lake Beach police officers and taken to the Round Lake Beach jail. *Id.* ¶¶ 34, 36. The next day, February 14, Mr. Tompkins was taken to court, where an order was entered requiring him to post a $10,000 bond as a condition of release. *Id.* ¶ 37. Mr. Tompkins remained in jail until February 19, when a relative posted bail on his behalf. *Id.*

On June 27, 2003, a bench trial was held on the charge against Mr. Tompkins. He was found not guilty at the conclusion of the prosecution's evidence. The trial judge ruled that the prosecution had failed to show that Mr. Tompkins had an unlawful purpose for making the telephone call to the Kohl's manager. *Id.* ¶ 39.

Mr. Tompkins' amended complaint also includes allegations that he believes that the telephone harassment charge is one manifestation of a conspiracy against him by law enforcement and by the Lake County State's Attorney's Office to violate his rights, wrongly depict him as a criminal, and deprive him of opportunities for gainful employment. *Id.* ¶ 38. In this regard, Mr. Tompkins makes reference in his amended complaint to three disorderly conduct charges that were made against him by Lake County prosecutors, one in 2003 and two in 2004. Mr. Tompkins alleges that he ended up defending himself on the 2003 charge due to the

unavailability of his attorney and was convicted; that the first 2004 charge involved his alleged violation of a restraining order resulting from the 2003 conviction; and that the second 2004 charge concerned an apparently unrelated matter. *Id.* ¶¶ 40-41. The two 2004 charges were dropped, Mr. Tompkins says, after he filed a motion for a change of venue, seeking to transfer the cases outside Lake County. *Id.* ¶ 41.

Mr. Tompkins' amended complaint includes two claims. The first is a claim under 42 U.S.C. § 1983; Mr. Tompkins alleges that the defendants violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution. *Id.* ¶ 45. The second is a claim of false arrest, false imprisonment, illegal search, and malicious prosecution under state law. *Id.* ¶ 47.

## Discussion

**1.     Krause motion to dismiss**

Mr. Krause argues that the claims against him are barred by the statute of limitations and that, in any event, he is immune from suit for actions taken in his role as a prosecutor. Because the second of these arguments is dispositive of Mr. Tompkins' claims against Mr. Krause, the Court will assume, without deciding, that Mr. Tompkins' claims were made in timely fashion.

As noted earlier, Mr. Tompkins alleges that assistant state's attorney Krause signed (or caused to be signed) an information – a form of criminal charge – that contained allegations he knew were false and then presented the charge to a Lake County judge, who issued a warrant for Mr. Tompkins' arrest based on the criminal charge. Am. Compl. ¶¶ 30, 32 & 34. Mr. Tompkins also alleges that at the hearing before the judge, the only witness who appeared was officer Prange, and that officer Prange presented no sworn affidavit or other sworn writing to support

5

the charge. *Id.* ¶¶ 31-32.

Mr. Krause argues that the claims against him should be dismissed because he is immune from civil liability for actions taken in his role as a prosecutor to initiate criminal charges. The Supreme Court has held that a state prosecuting attorney who acts within the scope of his duties in initiating and pursuing criminal charges enjoys absolute immunity from suit under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976). The primary rationale for this doctrine is that there is a public interest in enabling prosecutors to exercise independent judgment in deciding which cases to bring and in conducting those cases in court. *Id.* at 424; *see also, Kalina v. Fletcher,* 522 U.S. 118, 125 (1997). The doctrine of absolute immunity from suit extends not only to a prosecutor's actions in court, but also to his actions "in preparing for the initiation of judicial proceedings ... which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). By contrast, absolute immunity does not extend to a prosecutor's actions in providing legal advice to the police during their pretrial investigation or in fabricating evidence concerning an unsolved crime, as such actions involve acting in an investigative capacity, not in the capacity of an advocate in the judicial process. *See Kalina,* 522 U.S. at 507-08; *Buckley,* 509 U.S. at 273-74; *Burns v. Reed,* 500 U.S. 478, 492-96 (1991).

In *Kalina,* the Supreme Court ruled that a prosecutor's activities in connection with the preparation and filing of criminal charges (in that case, as in this one, an information) and a motion for an arrest warrant "are protected by absolute immunity." *Id.* at 129. The Court ruled, however, that a prosecutor's actions while acting "as a complaining witness rather than a lawyer," by filing a certification personally attesting to the truth of the facts alleged in a probable

cause application, were not protected by absolute immunity, because in that regard the prosecutor was acting as a witness, not as a lawyer. *Id.* at 129-30.

Mr. Tompkins argues that in this case, assistant state's attorney Krause acted in the capacity of a witness, not a lawyer, by signing the criminal charge (the information) that was filed against Mr. Tompkins. The Court disagrees. In his amended complaint, Mr. Tompkins alleges that the only witness who appeared before the Lake County judge was officer Prange, *see* Am. Compl. ¶ 32 – not assistant state's attorney Krause. In addition, Mr. Krause's signature on the information, unlike the certification at issue in *Kalina,* is not the functional equivalent of a personal attestation of the truth of the allegations made against Mr. Tompkins.[1] Illinois law *requires* a prosecutor to sign an information. *See* 725 ILCS 5/111-3(b). In short, when assistant state's attorney Krause signed the information (or had someone else do so on his behalf), he was not acting as a witness; rather, he was acting in a prosecutor's role as an advocate before the court. Allowing prosecutors to be sued civilly for signing off on criminal charges, as Illinois law requires whenever an information is filed, would subject hundreds of Illinois prosecutors to suit based on their routine performance of prosecutorial duties and would thereby undermine the purposes underlying the doctrine of absolute immunity.

The same analysis applies to Mr. Tompkins' state law claims against Mr. Krause. Mr. Krause is protected by absolute immunity from suit on those claims to the same extent that he enjoys immunity from suit on Mr. Tompkins' section 1983 claims. *See Aboufarris v. City of*

---

[1] Mr. Krause's signing of the information is also not the functional equivalent of the prosecutor's signing of an affidavit to obtain an arrest warrant, which the court in *Wright v. City of Peoria,* No. 05-1063, 2006 WL 90067, *2 (C.D. Ill. Jan. 13, 2006), held was the equivalent of giving testimony and thus was not subject to absolute immunity.

7

*DeKalb,* 305 Ill. App. 3d 1054, 1064-65, 713 N.E.2d 804, 812 (1994).

For these reasons, the Court grants defendant Krause's motion to dismiss on the grounds of absolute immunity.

**2.      Barr motion for summary judgment**

In his amended complaint, Mr. Tompkins alleges that Mr. Barr, who at some point in time was a staff attorney working for the Circuit Court in Lake County, signed the information knowing that it was false. Mr. Barr has moved for summary judgment, submitting an affidavit in which he states under oath that he did not sign the information; he did not start working for the court until October 27, 2003, over eight months after Mr. Tompkins was charged; and he was working for a private law firm at the time the charges were filed against Mr. Tompkins. Barr Affid. ¶¶ 1, 2, 6 & 7.

In response, Mr. Tompkins points out that the information contains, at the bottom, the following notation (we use a different type face to distinguish it from the text of this ruling):

```
                            MICHAEL J. WALLER
                            STATE'S ATTORNEY OF LAKE COUNTY

                       By:  _____[signature]_____
                            ASSISTANT STATE'S ATTORNEY

Subscribed and sworn to before me on _____2/17_____, 2003.


KRAUSE:ckh                  _____[signature]_____
BARR: RLB                         NOTARY PUBLIC
```

*See* Pl. Resp. to Mot. for Summ. Judg., Ex. 2 (copy of information). The signature on the line of

8

the information stating "Notary Public" appears on its face to be that of "Christi K. Hall." The signature on the line stating "Assistant State's Attorney," however, is basically illegible. Mr. Tompkins relies on the notation "BARR: RLB" on the left side of the page as denoting that the signer was a prosecutor named Barr; he obtained Benjamin Barr's name via discovery or other investigation. In response to Mr. Barr's motion for summary judgment, Mr. Tompkins asks the question, if the signature on the "Assistant State's Attorney" line is not Barr's, whose is it?

Mr. Tompkins' question is answered in materials submitted along with Mr. Barr's reply brief. Specifically, he has submitted an affidavit from Christie K. Hall, who at the relevant time was a secretary employed by the Lake County State's Attorney's Office. Ms. Hall states that she typed in the material that was included in the information that was filed with the court in Mr. Tompkins' case. Hall Affid. ¶¶ 3 & 8. Consistent with her usual practice and that of the State's Attorney's Office, Ms. Hall states, she typed on the left side of the document the name of the prosecutor who signed the information (Krause) along with her own initials (CKH), and directly below that, she typed the name of the police officer who came to the State's Attorney's Office to seek charges (Barr) along with an abbreviation denoting the officer's law enforcement agency (RLB, for Round Lake Beach). *Id.* ¶¶ 4-7, 10-12. Ms. Hall states that the police officer who came to seek the charges in Mr. Tompkins' case was Round Lake Beach officer Michael Barr and that the "Barr" reference in the information is to officer Barr, not to Benjamin Barr. *Id.* ¶¶ 16, 21.

In short, Mr. Barr has sworn that he did not sign the information and was not even working in Illinois at the time, and Mr. Tompkins has no contrary evidence. Mr. Barr is entitled to summary judgment on the claims against him.

### 3. Plaintiff's motion to appoint counsel

Mr. Tompkins filed his suit *pro se* on March 22, 2005, together with a motion for leave to proceed *in forma pauperis* and a motion for appointment of an attorney. In his original complaint, he named as defendants officer Prange, Kohl's and the store manager referenced earlier, his former employer Retail Grocery Inventory Service and one of its employees, and the Lake County State's Attorney's Office. Following initial review of complaint, the Court granted Mr. Tompkins leave to proceed *in forma pauperis* and denied his motion for appointment of counsel, without prejudice to renewal after the defendants responded to the complaint. The Court also dismissed the State's Attorney's Office as a defendant on the grounds that it was not a suable entity. *See* Order of Mar. 23, 2005.

The Court's March 23, 2005 order set the case for an initial status hearing on May 19, 2005. At that initial status hearing, the Court denied a motion by certain defendants to dismiss the complaint and also appointed counsel for Mr. Tompkins. The attorney initially appointed sought and was granted leave to withdraw, on June 29, 2005, on the ground that his law firm had represented Kohl's. On that same date, the Court appointed replacement counsel for Mr. Tompkins. That attorney represented Mr. Tompkins from shortly after that date through November 22, 2005; during that period, he negotiated a monetary settlement with Kohl's and the other Kohl's-related defendants.[2] In November 2005, Mr. Tompkins asked the Court to dismiss his appointed counsel on the ground that counsel had not provided adequate representation and had, among other things, failed to amend the complaint and conduct relevant discovery. The

---

[2] Though Mr. Tompkins now complains about the sufficiency of the settlement and the process that led to it, he agreed to the settlement and never interposed an objection to the settlement-based dismissal of his claims against the Kohl's-related defendants.

Court granted that motion on November 22, 2005 but decided to appoint a replacement attorney. New counsel was appointed on that same date.

In mid-April 2006, Mr. Tompkins filed a motion in which, among other things, he expressed concern about the lack of progress in his case and his new counsel's alleged lack of diligence. In the motion, Mr. Tompkins stated that he had asked counsel "numerous times that an amendment to the initial complaint be formulated, in regards to the plaintiff, showing all that he has suffered, and the means of his current status, as a result of the nature of what has transpired in a legal sense over the past 20 years." Motion of April 17, 2006 ¶ 12. He said that he was asking counsel to sue the Lake County State's Attorney's Office for conspiracy to deprive him of his constitutional rights, "involving arrests of past and present," including the arrest in the Kohl's matter. *Id.*

When Mr. Tompkins' motion was presented in court in late April, appointed counsel advised that she had served written discovery requests and was waiting for responses before filing an amended complaint. Counsel filed an amended complaint in early June, naming Mr. Krause and Mr. Barr additional as defendants. On June 8, 2006, a status hearing was held at which Mr. Tompkins, his appointed counsel, and counsel for Officer Prange appeared (Mr. Krause and Mr. Barr had not yet been served with summons). At the status hearing, Mr. Tompkins asserted a desire to sue the State's Attorney of Lake County. The Court inquired of appointed counsel whether she thought there was a basis to sue the State's Attorney. Counsel replied that she had named Mr. Barr and Mr. Krause as defendants on the ground they had committed acts as witnesses against Mr. Tompkins that put them outside the scope of the doctrine of absolute prosecutorial immunity. Counsel explained that she did not have a similar

11

basis to sue the State's Attorney. The Court denied Mr. Tompkins' motion seeking leave to add the State's Attorney as a defendant.

In early November 2006, appointed counsel filed a motion to withdraw, stating among other things that consistently throughout their representation of Mr. Tompkins, it was apparent that they and Mr. Tompkins had irreconcilable differences on how to handle the case, and that both counsel and Mr. Tompkins agreed that counsel should withdraw. On November 9, 2006, when the motion to withdraw was presented in court, Mr. Tompkins appeared and advised the Court that he did not object to counsel's withdrawal. He also filed on that date a motion seeking, among other things, a third appointed attorney. In his motion, Mr. Tompkins alleged, among other things, that his prior appointed attorneys had not done an adequate job representing him. He also made reference to their "lack of apparent concern of what plaintiff considered to be serious violations committed on a continual basis against him prior to this current case, and after the trial of the case" in state court that resulted in his acquittal. Motion of Nov. 9, 2006 ¶ 27. Mr. Tompkins also made reference to an alleged attempt "to cover up serious violations committed by members of the 19th Judicial Circuit," the circuit that includes Lake County. *Id.* ¶ 28. The Court took Mr. Tompkins' motion under advisement.

It is relatively clear that the problems that led to the termination of the second appointed counsel's services stemmed, at least in part, from counsel's apparent unwillingness to expand the case – to name additional defendants and additional claims against those defendants – as Mr. Tompkins wished. Both the first and second appointed counsel were, by all appearances at least, entirely willing to pursue the case as Mr. Tompkins filed it: as claims involving the allegedly improper charge of telephone harassment. Mr. Tompkins appears to want counsel to do more –

apparently, sue the State's Attorney of Lake County and, perhaps, state court judges in that county – but appointed counsel apparently did not believe they had a proper basis in law to file the type(s) of claims that Mr. Tompkins wanted them to file.

An attorney has a duty to represent his client loyally, competently, and with reasonable diligence. *See* N.D. Ill. Local Rules 83.51.7, 83.51.1(a) & 83.51.3. But an attorney also has an obligation not to pursue claims that the lawyer knows are unwarranted under existing law or that are unsupported by, or unlikely to be supported by, the facts. *See, e.g.,* Fed. R. Civ. P. 11(b)(2) & (3); N.D. Ill. Local Rule 83.51.2(f)(2). The Court cannot comment on whether it would or would not be appropriate for Mr. Tompkins to bring suit against Lake County judges or the State's Attorney, other than to note that judges have absolute immunity from suit under section 1983 for claims related to their judicial functions, *see Pierson v. Ray,* 386 U.S. 547 (1967), and the State's Attorney has absolute immunity under the circumstances the Court described earlier, in its discussion of the claims against Mr. Krause. These may or may not be among the reasons why prior appointed counsel have declined to pursue the case as Mr. Tompkins he would like. But whatever the reasons, Mr. Tompkins has no entitlement to an appointed attorney who will do whatever Mr. Tompkins wishes, irrespective of whether the law or the facts support such a course.

Turning to the question of whether a third attorney should be appointed, the Court considers, among other things, whether the plaintiff's claim is colorable, whether the plaintiff is in a position to investigate the facts, the presence of conflicting testimony, the complexity of the issues, and the plaintiff's capability to present the case on his own. *See, e.g., Maclin v. Freake,* 650 F.2d 885, 887-89 (7th Cir. 1981). The Court assumes, without deciding, that Mr. Tompkins'

claims against officer Prange, the remaining defendant, are colorable. Mr. Tompkins has not, however, shown that he is incapable of investigating the facts or presenting the case on his own, or that the facts or law relating to his claim against officer Prange are so complicated that Mr. Tompkins cannot handle the case without counsel. Indeed, Mr. Tompkins has shown, throughout the litigation, that he is capable of conducting legal research and presenting arguments on his own, even when his appointed counsel have not wanted to present them. There is no reason to believe that he will be incapable of conducting discovery and investigating the facts.

Mr. Tompkins has had the benefit of two appointed lawyers. One of them obtained a monetary settlement of his claim against the Kohl's-related defendants. The other pursued claims against defendants other than officer Prange to the extent they believed appropriate but was evidently unwilling to expand the case to include additional claims and additional defendants – a decision with which Mr. Tompkins disagreed and that appears to have contributed to the irreconcilable differences that resulted in counsel's withdrawal. There is no basis in the current record to believe that anything different would occur if a third attorney was appointed.

For these reasons, the Court declines Mr. Tompkins' request for a third appointed attorney.

## Conclusion

For the reasons stated above, the Court grants defendant Krause's motion to dismiss on the grounds of absolute immunity [docket no. 90], grants defendant Barr's motion for summary judgment [docket nos. 97 & 100], and denies plaintiff's motion to appoint counsel [docket no. 112]. The status hearing of December 6, 2006 is vacated and reset to December 13, 2006 at 9:30

a.m. The Court will set a schedule at that time for the completion of discovery and the

presentation of dispositive motions.

                                              _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge

Date:   November 29, 2006